Dunkin, Ch.
delivered the opinion of the Court.
In this case, very little need be said in addition to what has fallen from the Chancellor in his circuit decree. This decree must be modified, in one particular, so as to make it conform to the opinion of this Court.
The testator gave to his wife all his real estate, household and kitchen furniture, plantation tools of every description, provisions of all kinds, horses, hogs, cattle, and stock of every description, wagons, gears, bridles, saddles, and barouche, and every thing pertaining to the plantation use. He also gave her four negroes, to be selected by herself from among *376 all his negroes. This property she was to have and enjoy during her life, and at her death, the real estate was to be equally divided among the testator’s four sons: and his five daughters are each to receive one hundred and fifty dollars in compensation for their portion of the land.
The testator then proceeds, in the second clause, to provide as follows: — “ As I have already given unto my daughter, Eliza M. the wife of Daniel Y. Y. Funchess, two negroes, named Will and Hannah, one horse, saddle and bridle, one bed and furniture, I further desire, that as each one of my children marries or becomes of age, they are to receive out of my estate two negroes, one boy and one girl, between the age of ten and twenty years old, one horse, saddle and bridle, one bed and furniture, to make them equal with my said daughter, Eliza M. the wife of Daniel Y. Y. Funchess.”
The testator then says: — “ 3d. The remainder of my ne-groes not heretofore divided of in my will, is to be equally divided amongst my children, Eliza M. Funchess, Mary Catha-rine, James Baltus, Yandy Yastine L., Elizabeth Lovicia, Rachael Owins, David Jacob, Barbara Dorcas E. E., and Ab-salome Moorer Inabinit; but should any of my children aforesaid die without,an legal issue, their part is to return back, and be equally divided amongst my remaining heirs. I do give the same to them and their heirs forever.”
One of the questions made on the circuit trial, and also on this appeal, is this: — at what time did the testator mean that this division of the remainder of his negroes should take place, and his children be put into the possession of their respective shares thereof? The will does not, in terms, fix the time, though it is positive and express as to the gift. The construction that would give to the legatees under the third clause, a present right to a partition of the negroes, disposed of in that clause, is incompatible with other important parts of the will. The testator has been impartial in the disposition of his property among his children. He seems to have contemplated a perfect equality among them. He had given to his married *377 daughter, Mrs. Funchess, two negroes, a horse, saddle, &c. And his positive direction is, that as his children came of age or married, they should each receive, out of his estate, two negroes of a particular description, a horse, saddle, &c. All his children, with the exception of Mrs. Funchess, were and are still infants; the youngest not more than six years old. How can this provision be carried into effect; — how can this advancement of two negroes and the other articles, be made out of his estate to his children as they respectively come of age or marry, if the negroes are now to be divided? There is no fund in cash, or otherwise, from which this provision can be carried into effect. In fact, there is no property of any kind belonging to the estate which is to accomplish this end, unless resort is had to the negroes disposed of in the third clause. This is the view which the Chancellor has taken of this part of the subject. And in this the Court concurs.
This view of the case involves the necessary implication, that the negroes disposed of in the third clause, should remain in the hands of the executors, until the objects expressed in the second clause have been accomplished. And these are, that each one of the testator’s children shall, at the proper time, receive the advancement provided for in that clause. The means of making these advancements, are a charge upon the negroes disposed of in the third clause; which negroes are to remain in the possesion of the executors for this purpose, until the whole of this trust is performed: that is to say, until the last child entitled to take under the second clause, has received his or her advancement. After this a division may take place. In making the advancements under the second clause, the executors will resort, in the first place, to the stock of negroes belonging to the estate, for the purpose of getting negroes of a proper description to make the advancements. If none such are to be had from this source, they may be purchased from the income of the estate then on hand. If that be insufficient for this purpose, a resort may be had to some portion of the corf us of the estate in order to effectuate this intention of the testator. *378 But in the last named contingency, application must be made to this Court. The other articles to be advanced, namely, the horse, saddle, bridle, <fcc. must be provided for in the same way, as is indicated above, in reference to the negroes to be advanced.
So far this Court concurs in the views and in the decree of the Chancellor. But what is to be done with the income of the negroes disposed of in the third clause, until the time of the division? A portion of it will be absorbed, from time to time, in carrying into effect the provisions of the second clause. So much of it as may be necessary, will be applied to these purposes. But what is to become of the balance, and to whom does it belong? The circuit decree gives it for the maintenance of the minor children who reside' with the widow, and who are thus entitled, according to the decree, until they are to receive, their advancements. This Court is of a different opinion. It is not so given by the terms of the will, nor is there just ground for such an implication. The legacies given in slaves in the third clause are vested legacies, subject to be divested on certain contingencies. They are given in language, which imports a right to a present division. But this clause has been construed in connection with other parts of the will; so that, although the legacies are vested, the division and possession are postponed. This postponement takes place, because the property is subject to certain charges, which have been herein declared. ’ Subject to these charges, the legatees under the third clause are entitled to an equal share of the annual income, to be paid annually as the income arises. In other words, so much of the annual income as remains, after obtaining the necessary articles for carrying into effect the provisions of the second clause, according to the rules hereinbefore laid down, must constitute a fund to be distributed so soon as the fund exists in equal shares among all the legatees mentioned in the third clause. The circuit decree is, in this respect, reformed. In all other respects, it is affirmed and the appeal dismissed.
Johnston, Dunkin and Wardlaw, CC. concurred.

Decree modified.